UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------

:

KELLY L. FRISBY,                             :

:          CASE NO. 1:09-cv-2027

Plaintiff,                  :

:

vs.                                          :          OPINION & ORDER

:          [Resolving Docs. No. 5, 6]

KEITH D. WEINER & ASSOCIATES     :

CO., LPA, *et al.,*                          :

:

Defendants.               :

:

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendants Keith D. Weiner & Associates ("KWA"), Keith D. Weiner, and Kathi Van Horn

(collectively "the Defendants"), move this Court to strike certain allegations from Plaintiff Kelly

Frisby's Complaint pursuant to Federal Rule of Civil Procedure 12(f). [Doc. 5.]  In addition, the

Defendants move this Court to dismiss Counts III and IV of the Complaint under Rule 12(b)(6). [*Id.*]

Separately, Plaintiff Frisby moves this Court to dismiss Defendant KWA's counterclaim under Rule

12(b)(1).  [Doc. 6.]

In this overtime wage case, Plaintiff Kelly Frisby alleges that her former employer KWA: (1)

failed to pay her overtime in violation of the Fair Labor Standards Act of 1938, (2) failed to pay her

overtime in violation of Ohio's Minimum Wage Standards Act and the Ohio Constitution, (3) failed

to keep adequate employment records in violation of the FLSA, (4) failed to keep adequate

employment records in violation of the Ohio Act and Ohio Constitution, and (5) failed to pay wages

Case No. 1:09-cv-2027
Gwin, J.

owed her in violation of Ohio Rev. Code § 4113.15. [Doc. 1-2.]

The Defendants first move to strike an allegation in paragraph 37 of the Complaint relating to Defendant Keith Weiner's wife.  Second, the Defendants move to dismiss Counts III and IV of the Complaint on the grounds that neither the FLSA nor Ohio law provides a private right of action for failure to keep employment records.

With its Answer, Defendant KWA brings a counterclaim against Plaintiff Frisby seeking $2,025 allegedly due from Frisby under a February 2007 promissory note.  [Doc. 4 at 11.]  Plaintiff Frisby moves to dismiss the counterclaim for lack of subject matter jurisdiction.  [Doc. 6.]

For the following reasons, this Court **DENIES** the Defendants' motion to strike and **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion to dismiss Counts III and IV. Further, the Court **DENIES** the Plaintiff's motion to dismiss.

## I.  Legal Standards

Under Rule 12(f), "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Moreover, a motion to strike is addressed to the sound discretion of the trial court. *In re Keithley Instruments, Inc.*, 599 F. Supp. 2d 908, 911 (N.D. Ohio 2009) (citing *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997)).  Nevertheless, motions to strike are disfavored and granted only where the allegations are clearly immaterial to the controversy or would prejudice the movant. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *see also United States v. Am. Elec. Power Serv. Corp.*, 281 F. Supp. 931, 935 (S.D. Ohio 2002); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure § 1382 (3d ed. 2004)* ("[T]here appears to be general judicial agreement . . . that [motions to strike] should be denied unless the

Case No. 1:09-cv-2027
Gwin, J.

challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice . . ..")

In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's legal conclusions as true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1949 (citations removed). Rule 8 does not require "detailed factual allegations, but it requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations and internal quotations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is not a "probability requirement" but requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.* The Supreme Court has explained the line between possible and plausible: "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations and internal quotations omitted).

## II. Background Facts

Plaintiff Kelly Frisby worked for Defendant Keith D. Weiner & Associates as an accounting

-3-

Case No. 1:09-cv-2027
Gwin, J.

assistant and billing specialist from July 2001 to September 2008.  [Doc. 1-2 at 2.]  KWA is a law firm specializing in mortgage foreclosures and bankruptcies.  [Doc. 1-2 at 3.]  Defendant Keith Weiner serves as president of KWA while Defendant Kathi Van Horn worked as Plaintiff Frisby's immediate supervisor.  [Doc. 1-2 at 3.]  According to the Plaintiff, her duties primarily included preparing itemized cost and fee reports for KWA's clients as well as preparing monthly billing invoices.  [Doc. 1-2 at 4.]

Plaintiff Frisby says that from July 2006 to June 2008, KWA's business increased dramatically as a result of the rising number of foreclosures and bankruptcies nationwide.  [Doc. 1-2 at 4.]  Although KWA hired additional billing specialists to help Plaintiff Frisby with her heavier workload, she says that she still worked nearly sixty hours per week.  [*Id.*]  Moreover, Plaintiff Frisby claims that KWA repeatedly  failed to provide her with work-free meal or break periods and required her to work from home on weekends, holidays, and paid days off.  [Doc. 1-2 at 9.]  Ultimately, Plaintiff Frisby alleges that KWA incorrectly calculated her total hourly compensation by failing to include time spent working during breaks, meals, sick days, personal days, holidays, and weekends.  [Doc. 1-2 at 10.]

As a result of the Defendants' alleged failure to pay her appropriate overtime wages, Plaintiff Frisby sued KWA under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*; Ohio's Minimum Wage Standards Act, Ohio Rev. Code § 4111, *et seq.*; the Ohio Constitution, art. II, § 34; and Ohio Revised Code § 4113.15.

In its Answer, Defendant KWA brought a counterclaim against Plaintiff Firsby based on her alleged failure to pay the balance of a promissory note signed in February 2007.  [Doc. 4.]

Specifically, KWA says that on January 24, 2007, Plaintiff Frisby requested a loan from

-4-

Case No. 1:09-cv-2027
Gwin, J.

KWA that she would repay through deductions from her paychecks. [Doc. 4 at 10.] That same day, KWA loaned Frisby $2,000 interest free, and she and Defendant Weiner signed a promissory note to that effect. [Doc. 4-1.]

On February 8, 2007, Frisby requested additional funds from KWA. [Doc. 4 at 10.] KWA loaned Frisby an additional $1,000, and the parties executed a new consolidated promissory note showing that Frisby owed KWA $3,000, interest free. [Doc. 4-2.] This note provided that if Frisby left the company, any payroll funds due her would be applied toward the loan balance and that she would have full responsibility for any remaining balance. [Doc. 4-2.] The note does not contain any statement of when the balance is due.

According to Defendant KWA, when Frisby left KWA on September 12, 2008, she owed $2,025 on the loan and has not made any payments since that date. [Doc. 4 at 11.]

### III. Analysis

This Court turns first to the Defendants' motions to strike under Rule 12(f) and to dismiss Counts III and IV pursuant to Rule 12(b)(6). The Court then turns to the Plaintiff's motion to dismiss the counterclaim for lack of subject matter jurisdiction.

### A. Motion to Strike

In paragraph 37 of her complaint, Plaintiff Frisby alleges that "Defendant Keith Weiner's wife is an attorney certified by the Ohio State Bar Association as a specialist in Labor and Employment law." [Doc. 1-2 at 11.] The Defendants say that this reference to Wiener's wife—Evelyn Schonberg, counsel for the Defendants in this case—is "so utterly groundless and flagrant that it can only be viewed as immaterial, impertinent, and scandalous." [Doc. 5 at 2.]

Responding, Plaintiff Frisby argues that this reference to Schonberg is "highly material" to

-5-

Case No. 1:09-cv-2027
Gwin, J.

countering the Defendants' potential "good faith" defense under the FSLA because Defendant

Wiener's failure to consult with his wife on overtime law might be probative of a lack of good faith.

[Doc. 7 at 3.]  Moreover, Frisby says that Defendant Weiner's failure to consult with his wife could

show that his actions were "willful," thereby lengthening the applicable statute of limitations.  [*Id.*]

Ultimately, the Plaintiff says that she should be "allowed to present evidence and inquire further

concerning this matter."  [Doc. 7 at 3.]

Although this Court has broad discretion to grant a motion to strike under Rule 12(f), it

should do so only where the allegations are clearly immaterial to the controversy or prejudice the

movant.  *Brown & Williamson Tobacco Corp.*, 201 F.2d at 822; *Am. Elec. Power Serv. Corp.*, 281

F. Supp. at 935.  Without passing on the applicability of any privilege or on the merits of Frisby's

claims—matters best saved for later stages of this litigation—the fact that Defendant Weiner may

have consulted with his wife is not "clearly immaterial" to whether he acted in good faith with

reasonable grounds to believe that his actions did not violate the FLSA. *See* 28 U.S.C. § 260;  *see*

*also United States v. Firestone Tire & Rubber Co.*, 374 F. Supp. 431, 434 (N.D. Ohio 1974)

(refusing to strike allegation from defendant's answer where doing so would require some analysis

of underlying legal claims, and discovery rules would adequately protect plaintiff).

As for prejudice, the Defendants express concern that the Plaintiff's allegation is an attempt

to "disqualify Attorney Schonberg" from representing the Defendants or to alert the jury to

Defendant Weiner and Schonberg's marriage thereby discounting "Defendants' legal representation."

[Doc. 8 at 2.] The fact that the Complaint mentions Defendant Weiner's wife and her occupation,

however, does not bear significantly on either of these issues and the Defendants have not provided

any authority to the contrary.  The fact that Weiner and Schonberg are married and that Schonberg

Case No. 1:09-cv-2027
Gwin, J.

works as an attorney is public record and freely available to the Plaintiff.  Merely striking that fact from the Complaint would not automatically preclude the Plaintiff from mentioning it elsewhere nor would it suddenly remove the marriage from public record.  Thus, this Court finds that the Defendants have failed to show that paragraph 37 of the Complaint would prejudice them in this case.

Accordingly, this Court **DENIES** the Defendants' motion to strike paragraph 37 of the Complaint.

### B. Defendant KWA's Motion to Dismiss

As to the merits of Plaintiff Frisby's claims, the Defendants say this Court should dismiss Counts III and IV of the Complaint because neither the FLSA nor Ohio law provides a private right of action for failure to "make, keep and preserve" payroll records.  [Doc. 5 at 4.]  In response, the Plaintiff says that FLSA case law only prohibits private employees from seeking *injunctive* relief for such violations and that the Ohio Constitution expressly grants a legal remedy to employee plaintiffs. [Doc. 7 at 4-6.]

*1. Count III: Violation of the FLSA's Recordkeeping Requirements*

As to Count III, § 211(c) of the FLSA requires employers to "make, keep, and preserve" records of their employees' wages, hours, and other work conditions.  29 U.S.C. § 211(c).  Under § 215(a), it is unlawful for an employer to fail to comply with these records requirements.  *Id.* § 215(a)(5).  Finally, without mentioning these records provisions, § 216(b) creates a private cause of action for employees under the FLSA.  *Id.* § 216(b).

Interpreting the FLSA, the Sixth Circuit has held that the statute, "does not authorize employee suits for violations of the FLSA's record-keeping requirements.  Authority to enforce the

Case No. 1:09-cv-2027
Gwin, J.

Act's record-keeping requirements is vested exclusively in the Secretary of Labor." *Elwell v. Univ. Hosps. Home Care Serv.*, 276 F.3d 832, 843 (6th Cir. 2002). Although the Plaintiff here argues that this language is *dicta*, the Sixth Circuit's analysis on this point was central to the court's refusal to permit a jury instruction on the FLSA's record-keeping requirements. 276 F.3d at 843. Had a private right of action been available, the proposed instruction would have been proper. *Id.* at 843-44 ("Elwell's proposed instruction would allow the jury to find a willful violation of the FLSA if it concluded that University recklessly disregarded its statutory duty to keep records . . . This is an inaccurate statement of the applicable law, and its exclusion was proper.").

Moreover, rather than reading this directive as *dicta*, lower courts have repeatedly cited *Elwell* and held that the FLSA does not authorize employee suits for violations of § 211(c). *See, e.g.*, *Cunningham v. Elec. Data Sys. Corp.*, 579 F. Supp. 2d 538, 542-43 (S.D.N.Y. 2008) (holding that "there is no private right of action to enforce" § 211(c)); *Millington v. Marrow County Bd. of Comm'rs*, No. 2:06CV347, 2007 WL 2908817, at *13 (S.D. Ohio Oct. 4, 2007) (same); *Mathis v. Quicken Loans, Inc.*, No. 07-10981, 2007 WL 3227598, at *6 (E.D. Mich. Sept. 7, 2007) (refusing to permit recovery for FLSA record-keeping violation only); *Barton v. Pantry, Inc.*, No. 1:04CV748, 2006 WL 1367421, at *3 (M.D.N.C. May 17, 2006) ("[Section 216(b)] does not allow employees to bring actions, either for civil penalties, damages, or injunctive relief, for violations of the FLSA's record-keeping provisions."); *Twaddle v. RKE Trucking Co.*, No. 2:04CV557, 2006 WL 840388, at *4 (S.D. Ohio Mar. 28, 2006) (same).

Under the holding of the Sixth Circuit in *Elwell*, the FLSA does not provide a private cause of action against an employer for failure to maintain payroll records. Accordingly, this Court **GRANTS** the Defendants' motion to dismiss Count III and **DISMISSES** the claim with prejudice.

Case No. 1:09-cv-2027
Gwin, J.

*2. Count IV: Violation of Ohio's Statutory and Constitutional Recordkeeping Requirements*

In Count IV of her complaint, Plaintiff Frisby alleges that KWA "knowingly and wilfully failed to make, keep and preserve records of the hours worked by Frisby, in violation of the [Minimum Wage Standards Act] and the Ohio Constitution." [Doc. 1-2 at 12.]

Article II, section 34a of the Ohio Constitution establishes a fair minimum wage and requires employers to "maintain a record of the name, address, occupation, pay rate, hours worked for each day worked and each amount paid an employee for a period of not less than three years following the last date the employee was employed." Ohio Const. art. II, § 34a. Section 34a later provides:

> An action for equitable and monetary relief may be brought against an employer by the attorney general and/or *an employee* or person acting on behalf of an employee or all similarly situated employees in any court of competent jurisdiction . . . *for any violation of this section or any law or regulation implementing its provisions* . . . .

*Id.* (emphasis added). Finally, § 34a permits the Ohio legislature to enact implementing legislation but states that any such legislation must not "restrict[] any provision of the section . . . ." *Id.*

The Minimum Wage Standards Act ("MWSA") implements art. II, § 34a. *See* Ohio Rev. Code § 4111.14. Under the MWSA's provisions, every employer must make and keep various employee records, including records of the hours worked and wages earned by its employees. Id. § 4111.08. Moreover, the MWSA gives the director of commerce the power to inspect an employer's records for compliance. *Id.* § 4111.04(B).

No Ohio court interpreting art. II, § 34a or the MWSA, however, has held that employees do not have a private cause of action for violation of these recordkeeping requirements. In support of their argument to the contrary, the Defendants cite *Millington v. Marrow County Bd. of Comm'rs*, No. 2:06CV347, 2007 WL 2908817, at *13 (S.D. Ohio Oct. 4, 2007), *White v. Sears, Roebuck & Co.*, 837 N.E.2d 1275 (Ohio Ct. App. 2005), and *DeMell v. Cleveland Clinic Found.*, No. 88505,

-9-

Case No. 1:09-cv-2027
Gwin, J.

2007 WL 1705094, at *3 (Ohio Ct. App. 2007).

In *Millington*, the district court granted summary judgment to an employer on a former employee's claims that, *inter alia*, it failed to keep overtime records in violation of the FLSA and the MWSA. 2007 WL 2908817, at *13. Discussing the MWSA, the court held:

> Similarly, the authority to investigate whether records are properly kept is given to the Director of Commerce under Ohio Rev.Code § 4111.04. Although civil fines and criminal penalties may be imposed as a result of a violation, *see White v. Sears, Roebuck & Co.*, Ohio law does not provide for a civil cause of action for failure to maintain or falsification of records. *See DeMell v. Cleveland Clinic Foundation*.

*Millington*, 2007 WL 2908817, at *13 (internal citations omitted). Despite its plain terms, this holding does not persuade the Court. In addition to providing no discussion of the implications of art. II, § 34a, the district court cited to only two Ohio cases that simply do no consider the existence of a private right of action.

First, the *White* plaintiff did not directly make a claim under the MWSA. *White*, 837 N.E.2d 1275. Instead, the *White* plaintiff claimed that Sears fired him in violation of Ohio public policy. Among other elements, the *White* Court found that such a public policy claim required showings that "a clear public policy existed and was manifested in a state [] statute or administrative regulation, or in the common law (the clarity element)," and "[t]hat dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element)." 837 N.E.2d at 1278.

The *White* Court then found the MWSA's recordkeeping provisions provided a sufficiently clear "public policy" to support the plaintiff's wrongful termination in violation of public policy claim. *Id.* at 1279-80. However, the Court nevertheless dismissed the claim because "the public policy requiring the maintenance of accurate employee time records is adequately protected." *Id.* at

-10-

Case No. 1:09-cv-2027
Gwin, J.

1282.  To support this holding, the court noted that the director of commerce had the power to inspect employee records and that employers faced civil and criminal liability for failing to keep accurate employee records. *Id.*  This issue, of course, differs from whether an Ohio statute gives standing to present private claims on this record-keeping requirement.

Analyzing a similar wrongful termination in violation of public policy claim, the court in *DeMell* looked not to the record-keeping provisions of the MWSA, but to its retaliatory discharge provisions. 2007 WL 1705094 at *3.  Because the plaintiff had alleged that she was forced to falsify her timekeeping records and had been discharged when she complained, the court noted that the director of commerce had power to inspect records and that the statute imposed criminal liability for falsified records.  2007 WL 1705094 at *3.  Ultimately, because these enforcement mechanisms sufficiently protected the public policy, the court affirmed the dismissal of the claim. *Id.* at *4.

Nowhere did either court state much less hold that the statute precluded a private right of action, as Defendants contend.  Instead, the courts merely noted the director's right to inspect and the potential criminal penalties provided by the statute.  The Defendants' proposed inference—that because the courts recognized these remedies but not a private right of action, no such action exists—simply does not follow.  Moreover, the Defendants fail to provide this Court any case law or even argument as to why art. II, §34a's express grant of a private cause of action does not control this issue.

Accordingly, this Court **DENIES** the Defendants' motion to dismiss Count IV.

### C. Plaintiff Frisby's Motion to Dismiss

Plaintiff Frisby moves to dismiss Defendant KWA's counterclaim for payment of a 2007 promissory note on the grounds that this Court lacks subject matter jurisdiction over the claim.

-11-

Case No. 1:09-cv-2027
Gwin, J.

[Doc. 6.]  Specifically, Frisby says that because KWA's counterclaim does not arise out of the same transaction or occurrence as Frisby's and because no independent basis for federal jurisdiction exists, it must be dismissed.  [Doc. 6 at 2.] Responding, Defendant KWA says that under the appropriate test, its counterclaim is in fact compulsory and therefore, properly before this Court.  [Doc. 9 at 1.]

Federal Rules of Civil Procedure 13(a) and (b) govern compulsory and permissive counterclaims.  A counterclaim is compulsory if  it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and does not require adding another party over whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a).  In contrast, a permissive counterclaim is "any claim that is not compulsory."  Fed. R. Civ. P. 13(b).

Although this distinction matters when, for example, a party asserts that a claim has been forfeited because it was compulsory in a prior litigation, here the compulsory or permissive nature of Defendant KWA's counterclaim does not control the outcome of the Plaintiff's motion to dismiss.  Specifically, even if KWA's counterclaim failed the "logical relation" test applied to Rule 13 in the Sixth Circuit and was therefore permissive,[1] as Plaintiff Frisby contends, this Court would nevertheless have discretion to exercise jurisdiction over the claim under 28 U.S.C. § 1367.

In 1990, Congress enacted 28 U.S.C. § 1367 and provided supplemental jurisdiction.  That section extends federal courts' jurisdiction to "all other claims" in a civil action "so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2000).  Since its enactment, courts have wrestled with the extent to which § 1367 codifies existing jurisdictional rules or supersedes them.  In fact, both the Seventh and Second Circuits have analyzed the very

---

[1] See Sanders v. First Nat'l Bank & Trust Co., 936 F.2d 273, 277 (6th Cir. 1991) (noting that whether claim arises out of same transaction or occurrence, and is therefore compulsory,  is determined by the logical relation test).

-12-

Case No. 1:09-cv-2027
Gwin, J.

question at issue here and have found that § 1367 negates the judge-made rule that permissive

counterclaims require an independent basis of federal jurisdiction.

In _Channell v. Citicorp Nat'l Servs., Inc._, 89 F.3d 379 (7th Cir. 1996), a creditor filed a

counterclaim to collect debts in an action alleging violations of the Consumer Leasing Act, 15 U.S.C.

§§ 1667-1667e (2000).  In finding supplemental jurisdiction, Judge Easterbrook broadly extended

supplemental jurisdiction for a permissive counterclaim to the constitutional limits of Article III.

_Id_. at 385.  He required only "[a] loose factual connection between the claims." _Id._  (quoting

_Ammerman v. Sween_, 54 F.3d 423, 424 (7th Cir.1995)).

To similar effect, in _Jones v. Ford Motor Credit Co._, 358 F.3d 205 (2d Cir.  2004), an action

under the Equal Credit Opportunity Act, a finance company sought to file counterclaims seeking

amounts allegedly due on car loans entered by the plaintiffs.  Although agreeing with the district

court that the company's counterclaims were permissive, the Second Circuit broadly read 28 U.S.C.§

1367(a) as allowing jurisdiction for the counterclaim.[2/]  In so doing, the court noted, "After section

1367, it is no longer sufficient for courts to assert, without any reason other than dicta or even

holdings from the era of judge-created ancillary jurisdiction, that permissive counterclaims require

independent jurisdiction." 358 F.3d at 212-13.

Instead, according to the Second Circuit, the question is whether the counterclaim and

underlying claim "bear a sufficient factual relationship . . . to constitute the came 'case' within the

meaning of Article III and hence of section 1367." 358 F.3d at 214.  Although the court noted that

"the correct reading of subsection 1367(a)'s reference to 'the same case or controversy under Article

---

[2/]In keeping with Federal Rule of Civil Procedure 82, the Second Circuit "conclude[d] that the determination that a counterclaim is permissive within the meaning of [Federal Rule of Civil Procedure] 13 is not dispositive of the constitutional question whether there is federal jurisdiction over the counterclaim." 358 F.3d at 212.

-13-

Case No. 1:09-cv-2027
Gwin, J.

III' remains unsettled," 358 F.3d at 212 n.5, it nevertheless held that the claims before it constituted the same "case" because "[b]oth the ECOA claims and the debt collection claims originate from the Plaintiffs' decisions to purchase Ford cars." *Id.* at 214.

Since the enactment of 28 U.S.C.§ 1367 in 1990, the Sixth Circuit has not clearly described the limits to supplemental jurisdiction. *See Dodson v. Action Nissan, Inc.*, No. 3:05-0619, 2006 WL 2503621, at *1-2 (M.D. Tenn. Aug. 25, 2006) (following reasoning of Seventh and Second Circuits and holding that § 1367 controls jurisdiction over counterclaim). Formerly, the Sixth Circuit held that while a federal court has ancillary jurisdiction over compulsory counterclaims, permissive counterclaims must be dismissed unless they independently satisfy federal jurisdictional requirements. *See City of Cleveland v. Cleveland Elec. Illuminating Co.*, 570 F.2d 123, 126-27 (6th Cir. 1978); *Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*, 238 F. Supp. 2d 963, 968 (S.D. Ohio 2003).

In *Olden v. LaFarge Corp.*, however, the Sixth Circuit read § 1367 broadly and held that the statute overruled prior case law prohibiting absent members of a plaintiff class from aggregating their claims to satisfy the amount-in-controversy requirement for diversity jurisdiction. 383 F.3d 495 (6th Cir. 2004). Speaking broadly, the court reasoned: "The first part of the statute (§ 1367(a)) contains a sweeping grant of supplemental jurisdiction giving courts supplemental jurisdictional over all claims not excluded by the second part (§ 1367(b)). The second part of the statute contains all of the exclusions." 383 F.3d at 504. Notably, the Supreme Court affirmed this reasoning in *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566-67(2005) ("We hold that § 1367 by its plain text . . . authorized supplemental jurisdiction over all claims by diverse parties arising out of

-14-

Case No. 1:09-cv-2027
Gwin, J.

the same Article III case or controversy, subject only to enumerated exceptions . . ..").[3]

Because the Sixth Circuit, like the Seventh and Second, reads § 1367 as a "sweeping grant of supplemental jurisdiction," this Court holds that a permissive counterclaim need not independently satisfy federal jurisdictional requirements. Instead, this Court may exercise supplemental jurisdiction over the counterclaim as long as the counterclaim is part of the same "case or controversy" as the underlying claim, §1367(a), not specifically excluded by § 1367(b), and not coupled with any persuasive reason to nevertheless decline jurisdiction under §1367(c).

In this case, the two claims satisfy § 1367(a)'s requirement because they share a common factual connection. In the FLSA and Ohio law claims, the Plaintiff asserts that Defendant KWA failed to pay overtime wages and provide her with breaks on which she was completely relieved of work duties. At its core, the Plaintiff says the Defendant owes her monies and that the amount of money she is owed is determined after reference to federal and state law. Somewhat similarly, Defendant KWA's counterclaim says the Plaintiff owes it monies on the note and that payment of the note is linked specifically to any payroll funds potentially due Frisby. Morever, these claims both arise out of KWA and Frisby's relationship as employer and employee.

Because none of the exceptions to supplement jurisdiction enumerated in § 1367(b) apply here, this Court next looks to whether it should nevertheless decline to exercise supplemental jurisdiction for one of the reasons articulated in § 1367(c). Ultimately, the Court concludes that none of the concerns exists in this case and therefore, supplemental jurisdiction is appropriate.

First, Defendant KWA's counterclaim on the promissory note does not "raise a novel or

---

[3]Obviously, this Court recognizes that the Class Action Fairness Act of 2005 in some ways superseded the rule announced in *Olden* and *Allapattah. See* 28 U.S.C. § 1332(d)(2). Nevertheless, the Sixth Circuit's and Supreme Court's broad reading of § 1367 is instructive.

Case No. 1:09-cv-2027
Gwin, J.

complex issue of State law," 28 U.S.C. § 1367(c)(1), because it represents a type of state-law contractual dispute that federal courts routinely hear as a result of their diversity jurisdiction. In addition, this counterclaim does not "predominate" over the wage claim already before this Court. *Id.* § 1367(c)(2). Moreover, this Court has not "dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Finally, this Court finds that no "exceptional circumstances" exist that would justify declining jurisdiction for some compelling reason. *Id.* § 1367(c)(4).

In fact, the interests of judicial economy and efficiency support exercising supplemental jurisdiction over the counterclaim. It would be significantly inefficient to require two parallel cases. While the claims are not completely overlapping, efficiency counsels strongly in favor of exercising jurisdiction over both.

Accordingly, having found that § 1367 gives this Court supplemental jurisdiction over Defendant KWA's counterclaim, the Court **DENIES** the Plaintiff's motion to dismiss.

## IV. Conclusion

For the foregoing reasons, this Court **DENIES** the Defendants' motion to strike and **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion to dismiss Counts III and IV. Further, the Court **DENIES** the Plaintiff's motion to dismiss.

IT IS SO ORDERED.


Dated: November 17, 2009                    s/          *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE