UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

|  |  |  |
|---|---|---|
| | : | |
| KELLY L. FRISBY, | : | |
| | : | CASE NO. 1:09-CV-2027 |
| Plaintiff, | : | |
| | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Doc. No. 35] |
| KEITH D. WEINER & ASSOCIATES | : | |
| CO., LPA, *et al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendants Keith D. Weiner & Associates ("KWA"), Keith D. Weiner, and Kathi Van Horn move this Court for summary judgment on Plaintiff Kelly Frisby's claims that the Defendants failed to pay her overtime wages. [Doc. 35.]  Defendant KWA also moves for summary judgment on its counterclaim for $2,025 allegedly due from Frisby under a February 2007 promissory note.

For the following reasons, this Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' Motion for Summary Judgment.

## I. Background

Plaintiff Kelly Frisby worked in the billing department of Defendant Keith D. Weiner & Associates, Co., LPA—a debt collection law firm in Cleveland, Ohio—from July 2001 to September 2008.  Although the parties dispute the legal import of Frisby's duties, they generally agree that she billed and invoiced clients.  From 2001 to 2006, Defendant KWA paid Frisby on an hourly basis.

Case No. 1:09-CV-2027
Gwin, J.

From 2006 to 2008, however, Defendant KWA paid Frisby a salary.  In September 2008, Frisby left KWA's employ, working briefly as an outside billing consultant to the firm.  On July 22, 2009, Frisby filed suit against the Defendants, claiming they owed her unpaid overtime compensation from the time she worked at KWA.  In moving for summary judgment, the Defendants argue that they paid Frisby all overtime due and that Frisby's duties otherwise exempt her from eligibility for overtime.

Defendant KWA hired Frisby in July 2001 as a part-time accounting assistant.  A few months later, KWA promoted Frisby to the position full-time.  [Doc. 35-7 at 4-5.] In a 2002 self-appraisal form, Frisby described her duties as largely inputting billing information into invoices, reviewing the invoices, getting approval from her supervisor Defendant Kathi Van Horn, running various reports, and filing. [Doc. 35-11.]

From 2003 to 2004, Plaintiff Frisby continued to work in the firm's billing department as an accounting assistant and billing specialist.  During that time, Frisby's supervisor Van Horn gave Frisby generally positive evaluations for her ability to work independently and learn the firm's billing practices. [Doc. 35-20, 35-25.]  In 2004, Van Horn noted that Frisby had become "the billing master" and had assisted in training two KWA employees. [Doc. 35-25 at 4.]  On a 2005 evaluation form, Van Horn stated that Frisby "handled all aspects of [KWA's] billing and all fees and costs." [Doc. 35-31 at 4.]  Van Horn also noted that she would like to have Frisby train someone to handle some of her billing duties. [Id. at 6.]  In her affidavit, Van Horn states that she relied on Frisby to "run and manage" the firm's billing department. [Doc. 35-2 at 4.]

In 2005, Defendant KWA gave Frisby remote access to its computer system and Frisby began doing some work from home.  Although Frisby stated that she would sometimes work early in the

Case No. 1:09-CV-2027
Gwin, J.

morning or late a night, she would not always report those overtime hours to KWA. [Doc. 35-7 at 18-20.] Although supervisor Van Horn told Frisby she should report the hours so she could be paid, Frisby testified that at times she simply did not want to take the time to do so. [*Id.* at 20-21.]

In May 2006 Plaintiff Frisby asked Defendant Weiner, KWA's founding attorney and principal, to place her on a salary. [Doc. 35-7 at 77.] According to Weiner, he researched whether Frisby would be considered an exempt employee under the Department of Labor's regulations and concluded she would be. [Doc. 35-3 at 2.] Defendant Weiner then instructed Van Horn to calculate a salary that would cover "the highest anticipated number of hours in excess of forty hours per week that Kelly would be working." [*Id.* at 4.]

According to Van Horn, Frisby's hours varied from week to week in the year leading up to her being placed on salary, averaging approximately four hours of overtime per week. [Doc. 35-2 at 5.] Ultimately, Van Horn proposed a salary of $41,000, based on the assumption that Frisby would work approximately forty-seven to fifty hours per week at her hourly rate of $15.50. [Doc. 35-2 at 6, 35-7 at 29-30.] Frisby agreed to the amount and in May 2006 KWA began paying her a bi-weekly salary of $1,576.92. [Doc. 35-2 at 13, 35-7 at 34.]

In late January 2007, Frisby asked attorney Weiner for a $4,000 loan. [Doc. 35-40.] On January 24, 2007, Weiner and Frisby signed a promissory note for a $2,000 loan from KWA. [Doc. 35-42.] Several weeks later, Frisby asked for additional funds, and she and Weiner signed a consolidated promissory note for a total of $3,000. [Doc. 35-44.] Under this note, KWA would deduct $100 from Frisby's bi-weekly paycheck to pay off the balance. The note also provided: "If employment should terminate at any time prior to full repayment, Kelly L. Frisby-Ziemski hereby assigns any and all payroll checks to be applied towards the remaining balance. Any balance not

Case No. 1:09-CV-2027
Gwin, J.

covered by wages will be the full responsibility of Kelly L. Frisby-Ziemski." [*Id.*]  Although Frisby

made payments totaling $975, she stopped  repayment in July 2007 and not has resumed. [Doc. 35-7

at 45-46.]

Plaintiff Frisby received a three percent raise in July 2007 and continued to work at KWA

on a salary basis until June 2008. [Doc. 35-16.]  In January 2008, Frisby asked Defendant Weiner

for a promotion to "Billing Manager." [Doc. 35-32.]  In her request, Frisby stated:

> I have shown myself to be more than capable of being in charge of the billings and
> even in charge of the accounting department when Kathi [Van Horn]is gone (I tend
> to be the go to person when she is not here), but yet I remain in the same position I've
> had for years and I don't understand that. Both of you know my dedication and can
> do spirit. Yes, there have been some rough times, but through it all I have always
> performed 100% - sometimes more when needed. I do not complain about working
> late, coming in early, or even working on the weekends and by the end of each
> month, I always have everything done.
> . . .
> I want to be promoted to billing mgr. and have everything that title implies.  I do that
> job now, have all the responsibilities of that position, but do not get promoted, I don't
> understand it.[1]

[Doc. 35-32.]

Defendant Van Horn states that she did not believe a need existed to name Frisby "a manager

over a department that had one or two employees." [Doc. 35-3 at 5.]

Around February 2008, Frisby began working a part-time job outside of KWA to earn extra

money. [Doc. 35-7 at 56-57.] Because of the increased demand on her schedule, in May 2008 Frisby

asked attorney Weiner to place her back on hourly pay at KWA. [Doc. 35-10.]  Weiner agreed and

KWA  began paying Frisby an hourly rate of $16.45. [Doc. 35-7 at 77, 35-2 at 10.]

In September 2008, Frisby resigned from KWA.  According to Frisby, she left the firm

---

[1]Plaintiff Frisby now states that her description of her responsibilities reflects "some embellishment." [Doc. 35-7 at 59.]

Case No. 1:09-CV-2027
Gwin, J.

because Weiner had again refused to make her the firm's billing manager. [Doc. 35-7 at 82.] Even though Frisby declined attorney Weiner's request to reconsider, she did agree to stay on as a consultant in order to "train" Van Horn and any replacement as well as to prepare several manuals on billing. [Doc. 35-28.]   On September 22, 2008, Frisby and Weiner signed a Consulting Agreement, under which KWA would pay Frisby $25 an hour to serve as a billing consultant. [Doc. 35-30.]

Eventually, Frisby ended her consulting work and severed all ties with KWA.  On July 22, 2009, however, Frisby filed suit in state court against the Defendants, claiming they owed her unpaid overtime compensation. [Doc. 1.]  The Defendants removed the case to this Court and filed a Counterclaim against Frisby for the unpaid balance on the February 2007 promissory note. [Doc. 4.] After conducting discovery, the Defendants moved for summary judgment on Plaintiff Frisby's claims as well as their counterclaim. [Doc. 35.]  Plaintiff Frisby opposed the motion, [Doc. 45], and the Defendants replied.[2/] [Doc. 47.]  Accordingly, the motion is now ripe for ruling.

## II.  Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "A fact is material if its resolution will affect the outcome of the lawsuit."

---

[2/]On April 16, 2010, the Court granted the Plaintiff leave to file a sur-reply. [Doc. 52.] Although the Defendants also moved for leave to file a sur-rebuttal, the instant opinion and order renders that motion moot.

Case No. 1:09-CV-2027
Gwin, J.

*Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004) (citing *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See* *id.* at 586. Nor can the nonmoving party rely upon the mere allegations or denials of its pleadings. FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so

Case No. 1:09-CV-2027
Gwin, J.

one-sided that one party must prevail as a matter of law." *Martingale*, 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III. Analysis

Plaintiff Frisby brings claims against the Defendants under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201; the Ohio Minimum Wage Standards Act ("OMWSA"), Ohio Rev. Code § 4111; the Ohio Constitution Art. II, § 34; and the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15. Generally, Frisby alleges that the Defendants failed to pay her required overtime wages and keep adequate employment records. In deciding the Defendants' motion for summary judgment, the Court determines if a genuine dispute of material fact exists as to whether the governing statutes exempt Frisby from their overtime provisions and as to whether the Defendants' alleged violations were willful.

### A. Unreported Overtime

As an initial matter, the Defendants move for summary judgment on Plaintiff Frisby's claims that they failed to pay her all overtime wages due while she was an hourly employee—approximately July 2001 to May 2006 and May 2008 to September 2008. [Doc. 35-1 at 24.] According to the Defendants, summary judgment is appropriate because all the evidence in the record, including Frisby's own deposition testimony, indicates that KWA paid her for all overtime she reported. In opposing summary judgment, Frisby does not challenge this evidence or argument. [Doc. 45.]

In *Wood v. Mid-Am. Mgmt. Corp.*, 192 Fed App'x 378 (6th Cir. 2006), the court of appeals affirmed summary judgment against an employee who sought compensation for unreported overtime wages. Similar to the instant case, the employee in *Wood* reported some overtime hours but chose

-7-

Case No. 1:09-CV-2027
Gwin, J.

not to record others because of the administrative inconvenience. *Id*. at 380.  Even though the employee claimed that he told his supervisor that he had worked other unreported hours, the court of appeals affirmed judgment in the employer's favor because the employee's supervisor told him that he needed to report all overtime. *Id*. at 380-81.

Similarly, in this case, Frisby testified that she did not always clock in to the Defendants' system when working from home because she "didn't want to take the time to go upstairs to log on to the computer and to get on the server." [Doc. 35-7 at 20.]  Frisby also stated that sometimes she would simply tell Van Horn the number of overtime hours she worked. [*Id*. at 21.]  When asked if Van Horn instructed her explicitly to report all of her time, Frisby answered "I don't know in those words," but that Van Horn said generally, "I appreciate how hard you work.  You should - - maybe you should say you should be paid for it." [*Id*. at 20.]

Given this evidence and Plaintiff Frisby's decision not to challenge the motion for summary judgment on this claim, the Court finds no genuine dispute of material fact that the Defendants paid Frisby all wages due during the period Frisby worked as an hourly employee.  Accordingly, to the extent Plaintiff Frisby's claims rely on those unpaid wages, the Court **GRANTS** the Defendants' Motion for Summary Judgment.

### B. Exempt Status

Congress enacted the FLSA, "to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work," *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948). "Consistent with this goal, the Act requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week." *Acs v. Detroit Edison Co.*, 444 F.3d 763, 764-65 (6th Cir. 2006) (internal quotations omitted).  An FLSA plaintiff

Case No. 1:09-CV-2027
Gwin, J.

"must prove by a preponderance of evidence that he or she 'performed work for which he or she was not properly compensated.' " *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)) (brackets omitted).

Section 13(a) of the Act, however, sets forth an exception from overtime requirements for any salaried employee who works in a bona fide administrative or executive capacity.[3/] 29 U.S.C. § 213(a)(1).  The Defendants argue that this exception applied to Plaintiff Frisby during the time Frisby earned a salary—approximately May 2006 to May 2008.  As the Sixth Circuit has held, this Court must "narrowly construe the exemption against [the employer]." *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 515 (6th Cir. 2004).  Moreover, Defendant KWA bears the burden of proving each element of the administrative employee exemption by a preponderance of the evidence. *Renfro v. Ind. Mich. Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007).

To establish the overtime exception on summary judgment, Defendant KWA must show that no genuine dispute of material fact exists that (1) Frisby was compensated on a salary basis at a rate of not less than $455 per week; (2) Frisby's primary duty was the performance of office or non-manual work directly related to the management or general business operations of KWA or its customers; and (3) Frisby's primary duty included the exercise of discretion and independent judgment with respect to matters of significance. *Renfro*, 497 F.3d at 576 n.1; 29 C.F.R. § 541.200(a) (2004 & supp. 2010).

Plaintiff Frisby does not contest and sufficient evidence shows that the Defendants paid Frisby a salary in excess of $455 per week and that Frisby's primary duty required the performance

---

[3/]Ohio has adopted all of the FLSA's exemptions as part of the MWSA.  Accordingly, this Court considers the merits of the Plaintiff's federal and state claims together. *See Whisman v. Ford Motor Co.*, 157 Fed. App'x 792, 796 (6th Cir. 2005); *Berger v. Cleveland Clinic Foundation*, No. 1:05CV1508, 2007 WL 2902907, at *18 (N.D. Ohio Sept. 29, 2007).

Case No. 1:09-CV-2027
Gwin, J.

of office work related to KWA's general business operations.  Frisby does, however, argue that a genuine dispute of material fact exists as to the third prong: Frisby's exercise of discretion and independent judgment.  This Court agrees.

According to interpretive regulations issued by the Department of Labor, "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a).  The regulations also set out factors the fact finder should consider in making this determination, including:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

In this case, the conflicting evidence on Plaintiff Frisby's duties precludes summary judgment for the Defendants.[4/]  Although the Defendants generally provide evidence that Frisby did enjoy some

_____

[4/]The Defendants correctly observe that Plaintiff Frisby creates much of the dispute in this case by means of her own affidavit.  This fact alone, however, does not compel summary judgment in the Defendants' favor.  When a party provides an affidavit that merely questions the validity of the opposing party's evidence, summary judgment is likely proper. See, e.g., *Syvongxay v. Henderson*, 147 F. Supp. 2d 854, 859 (N.D. Ohio 2001) (citing *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001)).  However, when that party also swears to the facts of which she has personal knowledge and provides otherwise admissible testimony, a court may not simply disregard the entire affidavit because it is self-serving. See *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (error not to consider even
(continued...)

-10-

Case No. 1:09-CV-2027
Gwin, J.

administrative responsibilities, such as providing "consultation or expert advice to management" and "planning long- or short-term business objectives," the Court narrowly construes the exemption against the Defendants and concludes that the evidence submitted is not so one-sided that the Defendants must prevail as a matter of law.

For example, the parties dispute how much authority Frisby had to engage in fee negotiations with the firm's clients.  In addition to stating in her affidavit that she "had no authority to, and never did, negotiate billings with a client," [Doc. 45-1 at 5], Frisby also testified at deposition that "anything that was ever discussed with clients or negotiated was first sifted through Kathi Van Horn or Keith Weiner." [Doc. 35-7 at 14.]  The Defendants point to some contrary evidence in the record, such as an email Frisby wrote to attorney Weiner in June 2008 to keep him "in the loop" on two "very lengthy conversations" Frisby had with a client about the firm's billing. [Doc. 35-12.] Although this and other evidence may call into question Frisby's statements, it is the role of the fact finder, not of this Court, to weigh that evidence in determining whether the administrative exemption applies.

The Defendants further argue that Frisby managed the billing department and that everyone in the firm deferred to her judgment on billing issues.  Supervisor Van Horn states in her affidavit that Frisby would make suggestions about changing various billing practices and that she and attorney Weiner "took [Frisby]'s recommendations seriously and on most occasions followed them." [Doc. 35-2 at 4.]  For example, on one occasion, Frisby recommended a type of blanket fee to

---

⁴/(...continued)
self-serving affidavit where affidavit contains facts known by affiant).  Thus, although Plaintiff Frisby does use her affidavit to voice her negative opinion of the Defendants' version of the facts, she also sets forth her own testimony as to her duties and responsibilities.  To the extent Frisby's affidavit contains otherwise admissible, non-opinion evidence, the Court considers the affidavit in deciding the instant motion for summary judgment.

-11-

Case No. 1:09-CV-2027
Gwin, J.

simplify the billing procedures for a large client of the firm. [Doc. 35-7 at 63.]  After writing a proposal and getting Defendant Weiner's approval, Frisby sat in on a conference call with Weiner, KWA senior attorney Kim Hammond, and the client's president. [*Id.*]  According to Frisby's own testimony, she spoke with the president and ultimately the client agreed to the fee proposal. [*Id.*]

Other evidence, however, permits the inference that this incident may have been the exception rather than the rule.  For instance, when a KWA attorney raised a fee reporting question with Frisby, he cautioned: "Don't change anything you are doing unless Keith [Weiner] clears it." [Doc. 35-14 at 2.]  This statement comports with Frisby's testimony that in working on adjusting a retainer fee with another of the firm's clients, Defendant Weiner did not allow Frsiby to raise the issue with the client independently. [Doc. 45-1 at 19-20.]  Frisby also states in her affidavit that at some point in 2007, she suddenly lost her ability to access the firm's fee schedule folder and had to email another KWA employee—Teresa Geyer—every time she needed to bill a new client. [Doc. 45-1 at 6-7, 24.]

Defendant KWA also contends that Frisby, along with information technology representative David Klypchak, developed the firm's new computerized billing system in 2008.  For his part, Klypchak states that Frisby largely dictated how the new system should work and that he had to run any suggestions through her. [Doc. 35-5 at 2-3.]  Despite the fact that Frisby herself represented to a potential employer that she "helped develop the current billing software" at KWA, [Doc. 35-6 at 3], she says in her affidavit that her involvement was much less significant. [Doc. 45-1 at 12-14.]

Ultimately, although much of the Defendants' evidence may permit a fairly strong inference that Frisby acted with discretion and independent judgment in her work as a billing specialist for KWA, it does not compel that conclusion as a matter of law.  Accordingly, because a genuine dispute

Case No. 1:09-CV-2027
Gwin, J.

of material fact exists as to whether the FLSA's administrative exemption applies to Plaintiff Frisby, the Court **DENIES** the Defendants' motion for summary judgment on this claim.

### B. Willful Violation

The parties also dispute whether the Defendants' alleged violations of the FLSA were willful. The FLSA provides a two year statute of limitations for violations unless the plaintiff shows that the defendant violated the Act wilfully. 29 U.S.C. § 255(a); *Herman v. Palo Group Foster Home, Inc., 183 F.3d 468, 473-74 (6th Cir. 1999)*. If an employer wilfully violates the FLSA, the limitations period is three years. *Id.*

An employer violates the act only if it: "knew or showed reckless disregard for the matter of whether [its] conduct was prohibited by the statute." *Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 (1985)*. This standard does not permit an extension of the statute of limitations where the employer was simply negligent in determining an employee's exempt status or where the employer made a "completely good-faith but incorrect assumption" that it was following the Act. *McLaughlin v. Richland Shoe Co., 486 U.S. 128, 134-35 (1988)*.

Here, Plaintiff Frisby has not provided sufficient evidence to permit a reasonable fact finder to conclude that the Defendants wilfully violated the FLSA. In his affidavit, attorney Weiner states that when Frisby asked to be placed on a salary, he researched the Department of Labor's regulations on classification and concluded that they exempted Frisby. [Doc. 35-3 at 2-3.] Similarly, Frisby's supervisor Van Horn says that she independently analyzed Frisby's duties and recommended to Weiner that Frisby was an exempt administrative employee. [Doc. 35-2 at 6.]

In rebutting this evidence, Plaintiff Frisby generally attacks the Defendants' credibility and says that Weiner never told her that he had researched the FLSA exemption. [Doc. 45-1 at 16.]

-13-

Case No. 1:09-CV-2027
Gwin, J.

Frisby also provides a print out of the administrative exemption requirements that she claims she gave Weiner, apparently informing him of the FLSA's coverage. [Doc. 45-3.] Finally, Frisby points to an April 2006 email from Van Horn to Weiner indicating that Frisby had refused to work any more overtime. [Doc. 45-4.]

This evidence does not create a genuine dispute of material fact. First, Plaintiff Frisby's allegations that Van Horn and Weiner failed to research or discuss the FLSA exemption is not supported by evidence. In fact, Frisby claims she gave Weiner a sheet detailing the exemption, a fact that supports the conclusion that Weiner did consider whether FLSA exempted Frisby.

In her deposition, Plaintiff Frisby also stated that one of the attorneys working at Defendant KWA told her she did not fall into the Act's exemption because it was reserved for "professionals" and that she was "going to get screwed." [Doc. 46 at 5-6.] The Defendants correctly object to this evidence as hearsay. Irrespective of its inadmissability, the evidence does not support the inference that the Defendants wilfully violated the FLSA. Even if the statement had come from a seasoned labor and employment attorney testifying under oath, it merely indicates one attorney's opinion that the Defendants had mis-classified Frisby and that Frisby would suffer as a result.

Had the attorney spoken to Weiner or had Frisby raised the attorney's concerns with Van Horn or Weiner—which Frisby admits she did not do—this evidence might support a finding of wilfulness. As the record stands now, however, the evidence shows that Defendants Weiner and Van Horn researched Frisby's exempt status and concluded the exemption applied. The fact that others believed the conclusion incorrect or even that the conclusion might ultimately be incorrect, does not establish willfulness.

Accordingly, the Court finds the Defendants' alleged violations not willful as a matter of law.

-14-

Case No. 1:09-CV-2027
Gwin, J.

### C. Calculation of Damages

The Defendants also move the Court to determine the appropriate method for calculating damages should the jury find they mis-classified Frisby. Relying on the "Fluctuating Work Week" (FWW) method, 29 C.F.R. § 778.114, as well as several other regulations, the Defendants argue that any damages must be calculated at half time.

As one district court observed, "Over the past 20 years, courts have adopted two markedly different approaches to calculating back pay in exemption mis-classification cases." *Desmond v. PNGI Charles Town Gaming, LLC*, 661 F. Supp. 2d 573, 578 (D.W. Va. 2009) (relying on principles of *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) and holding half-time calculation of back pay appropriate); *compare Clements v. Serco, Inc.*, 530 F.3d 1224, 1230 (10th Cir. 2008) (holding that court may use FWW method to calculate back pay as long as parties had "clear mutual understanding" that fixed salary covered all hours worked), *and Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999) (affirming use of FWW method to calculate back pay award to mis-classified employee), *with Rainey v. Am. Forest & Paper Ass'n*, 26 F. Supp. 2d 82, 99-102 (D.D.C. 1998) (finding that retroactive application of FWW "runs counter to the plain meaning of the DOL regulations" and awarding back pay at time and a half rate).

The Sixth Circuit has not spoken on the issue and only one district court in the circuit has explicitly addressed it. *See Cowan v. Treetop Enters.*, 163 F. Supp. 2d 930, 938-43 (M.D. Tenn. 2001) (holding that employer could not retroactively employ FWW method to calculate damages and instead determining regular rate by dividing employee's "agreed-upon work hours" into his weekly compensation).

Regardless of whether the FWW method applies in this case, however, any half-time back

-15-

Case No. 1:09-CV-2027
Gwin, J.

pay award requires some agreement between the employer and employee as to what hours the fixed

salary covers. *See, e.g.*, *Clements*, 503 F.3d at 1230 ("By its own terms, [29 C.F.R.] § 778.114

applies only if there is a 'clear mutual understanding of the parties' that the fixed salary is

compensation for however many hours the employee may work in a particular week, rather than for

a fixed number of hours per week."); *Desmond*, 661 F. Supp. 2d at 583-84 (finding half-time

calculation appropriate under principles of *Overnight Motor* only where parties had "clear, mutual

understanding . . . that the defendant would pay the plaintiffs the fixed salary regardless of the hours

worked"); 29 C.F.R. § 778.113(a) ("If the employee is employed solely on a weekly salary basis,

his regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the

salary by the number of hours *which the salary is intended to compensate*.") (emphasis added).

In this case, a genuine dispute of material fact exists as to whether Frisby and the Defendants

had a clear agreement as to what hours her fixed salary covered.  In her affidavit, supervisor Van

Horn states that because Frisby's hours varied from week to week, she calculated her $41,000 salary

by assuming she would work forty-seven to fifty hours per week and multiplying that number by her

hourly rate of $15.50. [Doc. 35-2 at 6.]  Although supervisor Van Horn says that Frisby "understood

that the salary would compensate her for every week worked regardless of the number of hours she

worked," [*Id.*], Frisby says that her salary covered only "46.5 - 47 hours per week." [Doc. 45-1 at

30.]

Frisby's deposition testimony also highlights this conflict.  When asked why her $41,000

fixed salary represented an approximately $8,500 increase over her previous annual compensation,

Frisby answered that the increase "represented overtime in the week, hours over 40." [Doc. 35-7 at

31.]  Although this statement might permit the inference that Frisby believed her salary covered all

-16-

Case No. 1:09-CV-2027
Gwin, J.

overtime hours, Frisby also testified that she had calculated the salary based on her working only forty-seven or fifty hours per week, but that she worked much more. [*Id.* at 29.] This fact permits the inference that Frisby makes in her affidavit: she believed the fixed salary covered only forty-seven hours.

In light of this conflicting evidence, the Court cannot hold as a matter of law that Frisby and the Defendants had a clear mutual understanding as to the terms of Frisby's compensation. Because any half-time damages calculation presupposes this understanding and the jury must decide whether one exists, the Court reserves judgment on the proper calculation of any back pay award in this case.

### D. Counterclaim for Breach of Loan Agreement

Finally, Defendant KWA moves for summary judgment on its claim that Frisby breached the February 2007 loan agreement by failing to make payments after July 2007. In opposing summary judgment, Frisby contends that the loan agreement does not contain a material term: "how the loan was to be repaid if Frisby left KWA's employ." [Doc. 45 at 20.]

As to repayment, the loan agreement provides that Frisby would pay:

(1) $100.00 deduction from each bi-weekly payroll commencing February 23, 2007, until balance is paid.

(2) If employment should terminate at any time prior to full repayment, Kelly L. Frisby-Ziemski hereby assigns any and all payroll checks to be applied towards the remaining balance. Any balance not covered by wages will be the full responsibility of Kelly L. Frisby-Ziemski.

[Doc. 35-44.]

This provision does not state explicitly when the loan balance would become due, merely that Frisby would be responsible for that balance. Under Ohio law, a note that does not specify a maturity date is generally payable on demand. *Ranieri v. Terzano*, 457 N.E.2d 906, 910 (Ohio Ct.

-17-

Case No. 1:09-CV-2027
Gwin, J.

App. 1983). Moreover, when a promissory note is payable in installments, the promise to pay each installment operates as a separate note in itself. *Bertrand v. Lax*, No. 2004-P-35, 2005 WL 1503721, at *5 (Ohio Ct. App. June 24, 2005) (citing *Elworth-Helwick Co. v. Hess*, 9 Ohio App. 200 (Ohio Ct. App. 1918)).

Although the note in this case does not specifically provide for accelerating the obligation to pay the balance, the note requires Frisby to make bi-weekly $100 payments. She stopped repayment in July 2007. Even lacking an accelerator provision, she has defaulted on bi-weekly obligations that total more than the $2,025 balance on the loan.

Accordingly, the Court **GRANTS** the Defendants' motion for summary judgment on the breach of contract counterclaim.

### IV. Conclusion

For the foregoing reasons, this Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: April 21, 2010                                 s/       *James S. Gwin*
                                                                     JAMES S. GWIN
                                                                     UNITED STATES DISTRICT JUDGE

-18-